UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRANDON R. SMITH,

                             Plaintiff,

      v.                                        7:10-cv-353

BLACK & DECKER (U.S.) INC.,

                             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

       Plaintiff Brandon Smith commenced the instant action against Defendant Black & Decker, Inc. seeking to recover for personal injuries he claims to have sustained while using a circular saw designed and manufactured by Defendant. Plaintiff asserts claims of negligence, strict products liability, and breach of warranty. Presently before the Court is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Complaint in its entirety.

**I.    FACTS**

       According to the Complaint, Plaintiff enlisted in the United States Army. Plaintiff was deployed to Afghanistan. While in Afghanistan in February 2007, Plaintiff was making improvements to "B huts" at the Jalalabad Air Field. Plaintiff was using a saw he borrowed

from the Central Intelligence Agency.[1]  Plaintiff alleges he was using a corded, DeWalt[2] circular saw, or a saw identical in all respects, that had a black plate on the bottom, a yellow body, and a 7 1/4" blade to cut through boards.  Pl. Aff. at ¶¶ 43, 45.[3]  Plaintiff claims that he "made a cut into the board he was working with and then stepped around the board to cut from another angle.  The DeWalt 18-volt circular saw came into contact with the Plaintiff's right leg above the knee, cutting to the bone."  Sec. Am. Compl. at ¶ 13.  According to Plaintiff, "the DeWalt 18-volt circular saw safety-guard had malfunctioned and remained in an 'open' position, thereby failing to cover the rotating saw blade and causing the injury and damages. . . ."  Id. at ¶¶14, 41.  Since the accident, Plaintiff has been unable to locate the particular saw that he used.  Pl. Aff. at ¶ 27.  Thus, the saw has not been available for inspection by Plaintiff or Defendant.  Plaintiff similarly has been unable to obtain the medical note listing the exact date of his injury and the details concerning his injury.  Id at ¶ 35.  A military memorandum prepared one year after the accident indicates that Plaintiff was injured using a cordless saw.

Plaintiff commenced the instant action seeking to recover for the personal injuries he sustained as a result of the accident.  Presently before the Court is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 on the ground that Plaintiff is unable to identify the saw that is alleged to have caused his injuries.

---

[1] Plaintiff contends that it was common for members of the Army and Central Intelligence Agency to share tools at the Jalalabad Air Field.

[2] DeWalt Industrial Tool Co. is a business trade name used by Defendant Black & Decker.

[3] In the Second Amended Complaint, Plaintiff alleges he was using an 18-volt saw.

## II.	STANDARD OF REVIEW

Defendant moves for summary judgment pursuant to Rule 56. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56( c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

With these standards in mind, the Court will address the pending motion.

**III.     DISCUSSION**

Plaintiff asserts claims for strict products liability, negligence, and breach of warranty. "In New York, there are three distinct claims for strict products liability: (1) a manufacturing defect, which results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm; (2) a warning defect, which occurs when the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm; and (3) a design defect, which results when the product as designed is unreasonably dangerous for its intended use." McCarthy v. Olin Corp., 119 F.3d 148, 155-56 (2d Cir. 1997) (internal citations omitted).   Plaintiff asserts all three types of claims.

Defendant moves for summary judgment on the ground that Plaintiff is unable to establish that it manufactured the saw he was using in February 2007 or what particular saw was being used. In support of this argument, Defendant notes that: (1) Plaintiff first alleged that the saw was an 18 volt cordless saw, see Sec. Am. Compl. at ¶¶ 7, 11 - 15 (Dkt. No. 13); (2) Plaintiff now contends that the saw had a cord attached to it, see Pl. Aff. at ¶ 28; (3) Plaintiff has identified as many as seven potential models of the saw involved in the accident; (4) four saws meet the description of a "DeWalt 18 volt circular saw;" (5) there are three potentially different model DW378G saws (a pre-1998 recall model, a post-1998 recall model with the recall repairs made, and a post-2006 recall with the recall repairs made); and (6) within these models, there were numerous design changes between 1998-2007. Defendant also points to design difference between the various saws identified by Plaintiff. For example, the model DW378G has a die-cast aluminum upper and lower guard whereas three of the four 18-volt saws available between 2000 and 2007 contained a die-cast upper guard, but an injection-molded plastic lower guard. Defendant notes other differences between the

various saws, including that the DW378G uses a different component torsion spring relative to the lower guard than the 18-volt circular saws. Defendant claims that the lack of identity of the saw and the inability to inspect the particular saw prejudices it from mounting a defense, including determining whether the saw was manufactured as designed (addressing the manufacturing defect claim), or inquiring about any potential misuse, alteration or poor maintenance of the saw.

Plaintiff responds that, despite his efforts to locate the saw, he has been unable to do so. Plaintiff notes that he did not own the saw and, aside from using it to cut wood, never had control over it. He further maintains that he has provided sufficient descriptive information concerning the saw to create a triable issue of fact. Upon reviewing photographs of saws on the Internet and buying a DW378G, Plaintiff "located a saw that appeared to be identical in all respects to the one that injured [him]." Pl. Aff. at ¶¶ 45, 46.

"[O]ne of the necessary elements plaintiff in a strict products liability cause of action must establish by competent proof is that it was the defendant who manufactured and placed in the stream of commerce the injury-causing defective product." Healey v. Firestone Tire & Rubber Co., 87 N.Y.2d 596, 601 (1996). As the New York Court of Appeals has explained:

> The identity of the manufacturer of a defective product may be established by circumstantial evidence. . . . Moreover, circumstantial evidence may sufficiently demonstrate the maker's identity, notwithstanding the destruction of the allegedly defective product after use. . . .
>
> The circumstantial evidence of identity of the manufacturer of a defective product causing personal injury must establish that it is reasonably probable, not merely possible or evenly balanced, that the defendant was the source of the offending product. . . . Speculative or conjectural evidence of the manufacturer's identity is not enough.

Id., at 601-02.

The evidence before the Court is sufficient to create a triable issue of fact whether Defendant manufactured the subject saw. Plaintiff states in his affidavit that he was given a DeWalt saw. Pl. Aff. at ¶ 16. Plaintiff also states that the subject saw had a 7 1/4 inch blade, the plate on the bottom of the saw was painted black, and the body of the saw was yellow. Id. at ¶ 43. This description is consistent with a DeWalt saw. Plaintiff also states that his recollection of the size and shape of the saw he used in Afghanistan very much resembles pictures of DeWalt saws he has seen on the Internet. Id. at ¶¶ 43-45.

The more difficult inquiry concerns identification of the particular model saw involved in the accident that may have been manufactured by Defendant. In the Second Amended Complaint (and the earlier versions of the Complaint), Plaintiff identified an 18-volt circular saw. This suggests a cordless, battery operated saw. A military memorandum dated February 7, 2008 (approximately one year after the accident) notes that Plaintiff was using a "cordless circular saw." After reviewing unspecified catalogues and doing research on the Internet, in or around September 2010, Plaintiff indicated for the first time that the saw was a model DW378G - a corded circular saw.[4] In his affidavit opposing Defendant's motion, Plaintiff insists that the DW378G appears similar in all material respects to the saw he used. Whether Plaintiff used a DeWalt saw or a DW378G are triable issues of fact for the jury. Although Defendant points out inconsistencies in Plaintiff's various descriptions of the saw and in the available documents, those are credibility issues that cannot be decided on a motion for summary judgment.

---

[4] Defendant notes that certain (but not all) model DW378G saws were subject to recalls wherein the lower blade guard would fail to fully close, thereby leaving the blade expose and presenting a risk of laceration. Defendant contends that Plaintiff's knowledge of this recall caused him to claim that the DW378G was the saw that he used.

- 6 -

The Court further finds that spoliation sanctions are not warranted. "In order for an adverse inference to arise from the destruction [or loss] of evidence, the party having control over the evidence must have had an obligation to preserve it. . . ." <u>Kronisch v. United States</u>, 150 F.3d 112, 126 (2d Cir. 1998). There is nothing suggesting that Plaintiff ever had control over the saw within the meaning of this rule. According to Plaintiff, the saw was owned by the Central Intelligence Agency, which loaned it to Plaintiff (who was, at the time, enlisted in the United States Army) to perform certain construction work being formed on a military base in Afghanistan. Plaintiff does not know what happened to the saw after the accident. Moreover, Plaintiff contends that he unsuccessfully conducted an exhaustive search for the saw, including efforts to identify documentation concerning the saw. Because Plaintiff did not have control over the saw, he was under no obligation to preserve it. Further, there is nothing in the record suggesting that Plaintiff is responsible for the loss or destruction of the saw. It certainly cannot be concluded that Plaintiff intentionally destroyed the saw.

Lastly, the prejudice from the inability to identify or obtain the saw is suffered by both parties. Neither side is able to inspect the saw to determine, among other things: (1) the manufacturer; (2) the model number; (3) the date of manufacture; (4) any components of the saw that may have contributed to the accident; (5) any modifications to the saw; or (6) the overall condition of the saw on the date of the accident. Without the actual saw, Plaintiff has the uphill battle of proving that the saw was manufactured by Defendant, identifying a particular saw manufactured by Defendant, and then proving that the particular saw was defectively designed, subject to a manufacturing defect, or contained inadequate warnings. For purposes of the breach of warranty claim, Plaintiff will have to show that the saw was sold within the relevant statute of limitations period. Defendant, on the other hand, is

prejudiced by the fact that it will be unable to test the condition of the saw on the date of the accident and determine whether, among other things, the saw was misused, altered, or poorly maintained. Accordingly, spoliation sanctions are not warranted.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: January 3, 2011

_____
Thomas J. McAvoy
Senior, U.S. District Judge